**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 12 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

MERRILL LYNCH BUSINESS
FINANCIAL SERVICES, INC.,

        Plaintiff - Appellant,

    v.

ARNOLD NUDELL,

        Defendant - Appellee.

No. 03-1163

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 02-N-942 (BNB))**

---

Peter A. Jaffe, Law Offices of Peter A. Jaffe, LLC, McCoy, Colorado, appearing for Plaintiff-Appellant.

Burton H. Levin, Levin & Levin, LLP, Edwards, Colorado, appearing for Defendant-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **BRORBY**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

---

**TACHA**, Chief Circuit Judge.

Plaintiff-Appellant Merrill Lynch Financial Business Services, Inc.

("Merrill Lynch") brought a diversity action to collect on a debt that Defendant-

Appellee Arnold Nudell guaranteed. Mr. Nudell, in response, filed a motion to dismiss based upon the *Rooker-Feldman* doctrine, which the district court granted. We take jurisdiction pursuant to 28 U.S.C. § 1291, REVERSE, and REMAND.

## I. BACKGROUND

This case comes to us from a motion to dismiss. We present the facts, therefore, as stated in the Complaint. On August 15, 1995, Genesis Technologies, Inc. ("GTI") executed two Notes, Loans, and Security Agreements in favor of Merrill Lynch in the amount of $300,000.00. On this same day, Mr. Nudell, President of GTI, executed an unconditional guaranty of each note in which he agreed, among other things, that Merrill Lynch "shall not be required at any time, as a condition of the undersigned's obligation hereunder, to resort to payment from [GTI.]"

GTI failed to repay the loans to Merrill Lynch, and, in May 2001, Mr. Nudell and Merrill Lynch entered into a forbearance agreement delaying repayment of the loans until July 31, 2001. Mr. Nudell failed to repay the loans by that date, which, given the accumulation of interest and a line of credit increase, amounted to $591,185.15 plus late fees.

Merrill Lynch then launched a collection action in Colorado state court against both GTI and Mr. Nudell. Unbeknownst to Merrill Lynch, GTI had filed

-2-

for bankruptcy on the previous day in the Bankruptcy Court for the District of Colorado. In December 2001, Mr. Nudell filed in Colorado state court a motion to dismiss or, in the alternative, to stay pending the bankruptcy proceeding.

The state court granted the motion to dismiss on May 1, 2002, stating in full:

> **THE COURT** , having considered Defendant Nudell's Motion to Dismiss and otherwise being fully advised in the premises, **GRANTS** the Motion. Now, therefore, **IT IS ORDERED** that the action is dismissed without prejudice.

GTI's bankruptcy case was closed on May 6, 2002. One week later, Merrill Lynch commenced the present diversity action in the United States District Court for the District of Colorado only against Mr. Nudell, seeking to enforce his guaranty of the GTI loans.

Mr. Nudell then moved to dismiss for, inter alia, lack of subject matter jurisdiction. He argued that, because the state court dismissed Merrill Lynch's collection action without prejudice, the *Rooker-Feldman* doctrine barred a federal court from taking subject matter jurisdiction over Merrill Lynch's claim. The district court granted Mr. Nudell's motion and dismissed the complaint. Merrill Lynch filed a timely notice of appeal.

## II. STANDARD OF REVIEW

Mr. Nudell raised this issue in a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). "Rule 12(b)(1) motions

-3-

generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003) (internal citation and quotations omitted). We review de novo the district court's dismissal for lack of subject matter jurisdiction and review for clear error any jurisdictional findings of fact. *Id*.

## III. DISCUSSION

On appeal, Mr. Nudell urges that the state court's dismissal without prejudice triggers application of the *Rooker-Feldman* doctrine. Mr. Nudell concedes, as he must, that "[t]he state court's order did not have preclusive effect" because, under Colorado law, a dismissal without prejudice means a dismissal not on the merits of the case. *See, e.g., Wistrand v. Leach Realty Co.*, 364 P.2d 396, 397 (Colo. 1961). Nevertheless, Mr. Nudell contends that the *Rooker-Feldman* doctrine applies because it "is not limited to situations in which the state court's decision would be entitled to res judicata effect, for if so there would be no need for the doctrine." Although we agree with Mr. Nudell that the *Rooker-Feldman* doctrine has a broader scope than res judicata, we find the doctrine inapplicable in this instance.

The *Rooker-Feldman* doctrine [1] establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision. *See* 28 U.S.C. § 1257(a) (establishing Supreme Court jurisdiction to review certain "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had"). Thus, in applying the *Rooker-Feldman* doctrine, we focus on whether the lower federal court, if it adjudicated plaintiff's claims, would effectively act as an appellate court reviewing the state court disposition. *See Dist. of Columbia Court of Appeals v.*

---

[1] In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the plaintiff, after losing in state court, brought a new action in federal court seeking a bill in equity for relief from the state court judgment. The Supreme Court found the bill to be "merely an attempt to get rid of the judgment for alleged errors of law committed in the exercise of [full state-court] jurisdiction." *Id*. at 416. The Court held that "[u]nder the legislation of Congress, no court of the United States other than [the Supreme] Court could entertain a proceeding to reverse or modify the [state court] judgment for errors" of constitutional law. *Id*.

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the plaintiff, following a "highly structured program of study in the office of a practicing attorney[,]" passed the Virginia and Maryland bar examinations. *Id*. at 465. Mr. Feldman then petitioned the District of Columbia Court of Appeals to make an exception to the local rule that limited bar admission to candidates who had graduated from an ABA-approved law school, or who had graduated from a non-approved school and completed twenty-four semester-hours of study at an approved school, suggesting that denial of his application would violate various constitutional requirements. Nonetheless, the court denied his application. Mr. Feldman brought an action in federal district court challenging the denial on constitutional grounds. The district court, relying on *Rooker*, dismissed for lack of jurisdiction to review a state court order. The Supreme Court agreed, concluding that the denial of the request to waive the admission requirements was "judicial in nature." *Id*. at 479.

-5-

*Feldman*, 460 U.S. 462, 483 n.16 (1983) (Under the *Rooker-Feldman* doctrine, "lower federal courts possess no power whatever to sit in direct review of state court decisions."); *Kenmen Eng. v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002) ("*Rooker-Feldman* protects state-court judgments from impermissible appellate review by lower federal courts.").

Given this focus, it is not surprising that the *Rooker-Feldman* doctrine shares a close affinity to claim and issue preclusion. Indeed, in many circuits, the *Rooker-Feldman* doctrine is coextensive with preclusion doctrine. *See, e.g., In re Lease Oil Antitrust Litig. (No. II)*, 200 F.3d 317, 319 n.1 (5th Cir. 2000); *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 199-200 (2nd Cir. 1996); *Robinson v. Ariyoshi*, 753 F.2d 1468, 1472 (9th Cir. 1985), *vacated on other grounds*, 477 U.S. 902 (1986).

In the Tenth Circuit, however, we apply the *Rooker-Feldman* doctrine in a slightly broader fashion. "[T]he *Rooker-Feldman* doctrine—unlike res judicata—does not distinguish between 'temporary' and 'final' orders." *Kenmen Eng.*, 314 F.3d at 474; *accord Charchenko v. City of Stillwater*, 47 F.3d 981, 983 n.1 (8th Cir. 1995) ("We note that *Rooker-Feldman* is broader than claim and issue preclusion because it does not depend on a final judgment on the merits. Aside from this distinction the doctrines are extremely similar."). Thus, under our law, the *Rooker-Feldman* doctrine mirrors claim and issue preclusion, except

that *Rooker-Feldman* applies to temporary and non-final orders. *See Kenmen Eng.*, 314 F.3d at 474.

Pursuant to Supreme Court precedent, we apply the *Rooker-Feldman* doctrine: (1) to those federal claims actually decided by a state court, and (2) to those federal claims inextricably intertwined with a state court judgment. *Id*. at 475. When a state court does not pass on the merits of the claim the "actually decided" test is not satisfied. *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 707 (10th Cir. 2004) ("Plainly, the merits of [plaintiff's] claims for relief . . . were not actually decided by the Oklahoma district court, which performed no merits analysis and dismissed [plaintiff's] appeal due to defective service of process.").

> To discern whether the "inextricably intertwined" standard applies, we ask
>
> whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. Three related concepts—injury, causation, and redressability—inform this analysis. In other words, we approach the question by asking whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress. *Kenmen Eng.*, 314 F.3d at 476 (internal citations and quotations omitted).

In applying these principles, our recent *Pittsburg County* opinion held that a dismissal not on the merits does not trigger application of the inextricably intertwined test. *Pittsburg County*, 358 F.3d at 707 (holding that because the state court did not reach the plaintiff's federal claims on the merits, the federal

"claims do not result from the state court judgments dismissing [them]"). Thus, the "inextricably intertwined" test is not satisfied when a federal plaintiff brings claims that the state court did not review on the merits. *See id.* at 708 n.3.

Here, the state court, by dismissing without prejudice, did not pass on the merits of the case. Although Mr. Nudell suggests numerous on-the-merits grounds that he presented in his state court motion on which the state court could have relied, given the dignity and respect due a state court decision, we take the court at its word that it "dismissed without prejudice." As the Colorado Supreme Court held in *Wistrand*, dismissal without prejudice means not on the merits:

> Here the order of dismissal expressly specifies that it is without prejudice. To now urge that the dismissal prejudiced [plaintiff's] right to have his claim adjudicated does violence to the rule and the court's order. It is difficult to see how the court could have better assured [plaintiff] that he could again go to court and have his claim adjudicated on the merits. *Wistrand*, 364 P.2d at 397.

Because the state court, by dismissing without prejudice, did not reach the merits of Merrill Lynch's claim, neither the actually decided nor the inextricably intertwined tests are satisfied. Hence, the *Rooker-Feldman* doctrine does not apply. *See Pittsburg County*, 358 F.3d at 708 n.3 (citing *Whiteford v. Reed*, 155 F.3d 671, 674 (3d. Cir. 1998) ("This court has consistently held that where a state action does not reach the merits of a plaintiff's claims, then *Rooker-Feldman* does not deprive the federal court of jurisdiction.") & Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4469.1, at 130-31 (2d ed. 2002) ("A

decision not on the merits also does not oust federal jurisdiction to decide on the merits.")).

## IV.  CONCLUSION

As the *Rooker-Feldman*  doctrine is inapplicable here, we REVERSE the district court's dismissal and REMAND for further proceedings consistent with this opinion.